IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-00227-WJM
Civil Case No. 23-cv-01621-WJM

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.

ZEBBODIOS DEJUAN HALL,

    Defendant-Movant.

**UNITED STATES' RESPONSE TO MOTION TO VACATE**

    Zebbodios Hall was convicted of transferring a firearm to a convicted felon who turned out to be a confidential informant. Hall's guilt was largely recorded and transcribed in conversations with the informant. Confronted with a guidelines range that recommended imprisonment, his counsel negotiated a plea deal in which the government agreed to recommend probation, which the Court imposed. Hall now moves to vacate his conviction on the grounds of ineffective assistance of counsel, prosecutorial misconduct, and outrageous government conduct. None of these claims entitle Hall to relief. The Court should therefore deny the motion.

**BACKGROUND**

    In July 2020, Hall met a man named "Mickey" during protests that both attended. Doc. 26 at 5. Hall saw Mickey with Kurdish military force items. Doc. 34 ¶ 14. One thing led to another, and Hall asked Mickey to provide military-style training to him and

1

other protestors. Doc. 26 at 5. Mickey agreed, but said that he needed a firearm. *Id*. The problem, Mickey explained, was that he could not buy one because he was a convicted felon. *Id.* Hall accordingly agreed to buy a firearm for Mickey. *Id.* Hall knew that Mickey was a convicted felon and that the purchase would be illegal. *Id.*

On August 27, Hall met Mickey outside a Bass Pro Shop in Denver. Mickey gave $1,500 to Hall, who went inside and picked out a Smith & Wesson .45 caliber pistol. Hall filled out the necessary paperwork—ATF Form 4473—on which he affirmed that the firearm was for himself. He then met Mickey, told him the firearm would be ready for pick-up tomorrow, and gave him his change. Doc. 26 at 5-6.

The next day, Hall returned to the store, where he signed the Form 4473 and picked up the firearm. Doc. 26. at 6. He then met Mickey and gave him the firearm. Hall told Mickey that he was "strapped." *Id.* So Mickey gave Hall $200 and said that he did not need to repay the amount because Mickey appreciated Hall "running around doing shit for me." *Id.* As it turned out, Mickey was an FBI confidential informant. Mickey met up with FBI agents and gave them the firearm. *Id.*

Hall pleaded guilty to transferring a firearm to a convicted felon, in violation of 18 U.S.C. § 922(d). This Court sentenced Hall to three years' probation. *See* Doc. 38. He now asks the Court to vacate his conviction. *See* 28 U.S.C. § 2255.

## RULE 5 STATEMENT AND TIMELINESS

Hall has not previously used any other federal remedies. His motion (filed June 26, 2023) is timely because it was filed within one year of the date his judgment of conviction became final (that is, when the time to file a direct appeal ran out on

2

September 22, 2022). 28 U.S.C. § 2255(f)(1); Fed. R. App. P. 4(b)(1)(A)(i). Hall is "in custody" within the meaning of 28 U.S.C. § 2255(a), because he is currently on probation. *See United States v. Condit*, 621 F.2d 1096, 1098 (10th Cir. 1980).

## ARGUMENT

This Court construes Hall's pro se motion liberally, but does not "assume the role of advocate" for him. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Hall asserts three claims for relief: ineffective assistance of counsel, prosecutorial misconduct, and outrageous government conduct.

### I. Hall was not denied effective assistance of counsel.

Ineffective-assistance claims are properly raised in a § 2255 motion. *Beaulieu v. United States*, 930 F.2d 805, 807-08 (10th Cir. 1991). A defendant must show both that counsel's performance "fell below an objective standard of reasonableness" and that he was prejudiced. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Hall has shown neither.

#### A. Hall has not shown counsel's performance was unreasonable.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). Hall contends that his counsel was ineffective for failing to investigate his mental health and the informant, "Mickey." Hall says that this investigation would have supported an entrapment defense at trial.

But the record shows that counsel investigated both areas. On mental health, Hall says that counsel "did not consider" his PTSD, a head injury in May 2020, and other mental-health issues that left him "more prone and vulnerable to being intimidated

3

to commit the crime." Doc. 42 at 4.  Yet in her sentencing statement, counsel noted Hall's "significant" mental-health issues, including "long-standing diagnosed PTSD" and a history of traumatic-brain injuries, including "one that he received only weeks prior to this offense[.]"  Doc. 32 at 8.  She argued in mitigation that these issues made Hall "uniquely vulnerable and susceptible to being used or manipulated by others[.]"  *Id.*

Similarly, Hall says that counsel failed to investigate the informant, who was later "exposed in the press as a violent criminal used and weaponized by the FBI."  Doc. 42 at 4.  But again counsel asserted in her sentencing statement that the informant was a convicted felon who drove a hearse that appeared "to be stocked with guns" and that he "posted bizarre videos on Twitter and YouTube[.]"  Doc. 32 at 10.  She provided links in support, including one to an article that detailed the informant's criminal history.  *Id*.  Based on this information about the informant, counsel argued that the circumstances of the offense were mitigating.  *Id.* at 9-10.

In short, counsel investigated both areas Hall says she failed to.  If Hall's complaint is that counsel did not unearth every last detail about his mental health or the informant, "reasonable professional judgments support[ed] the limitations on investigation[,]" and Hall has not shown otherwise.  *Strickland*, 466 U.S. at 690.

Hall fares no better insofar as his motion can be read to dispute counsel's recommendation that this information was better directed toward mitigation for plea and sentencing purposes rather than an entrapment defense at trial.  That was the sort of "strategic choic[e] made after thorough investigation of law and facts relevant to plausible options" that is "virtually unchallengeable[.]"  *Strickland*, 466 U.S. at 690.

4

Indeed, counsel's determination that an entrapment defense would likely fail was well-supported by the law and facts.  *See* Doc. 42 at 4 ("[S]he did not think I had a chance to win with the entrapment defense.").  To even get a jury instruction on entrapment, a defendant must show both that a government agent "induced [him] to commit the offense" and that he "was not otherwise predisposed to commit" it.  *United States v. Nguyen*, 413 F.3d 1170, 1178 (10th Cir. 2005) (cleaned up).

Hall faced a heavy lift on predisposition alone, which "may be inferred[,]" for example, "from a defendant's desire for profit, his eagerness to participate in the transaction, [or] his ready response to the government's inducement offer."  *Nguyen*, 413 F.3d at 1178 (cleaned up).

Hall displayed all these markers of predisposition in his conversations with the informant—which were recorded, transcribed, and produced in discovery.  Hall was eager for the informant to provide him with military-style training.  In exchange, the informant needed a firearm, which Hall agreed to purchase.  Here is the discussion when the informant first approached Hall about the crime.  Ex. 1 at 16.

> **Hall**:  I need to be trained.
>
> **CHS:**  Yeah, well, I'll…
>
> **Hall:**  Will you help, can you train me.
>
> **CHS:**  Yes, I can.  But all I can say is I need a weapon because I can't sit there and hold your—this is not like ghost where I'm holding your hand so I can make you look beautiful.

During this meeting, Hall demonstrated his readiness to make the purchase.  *Id.* at 17.

> **Hall:**  Okay, how do I get it?

5

> **CHS:** Can you pass a background check?
>
> **Hall:** Yeah.
>
> **CHS:** There's your answer.
>
> **Hall:** Alright then I'll go get.

He then confirmed that he was perfectly fine with the crime. *Id.* at 19.

> **CHS:** You're fine with that, right?
>
> **Hall:** Or I wouldn't of asked.

A later conversation, about a week before the purchase, further demonstrated the lack of reluctance on Hall's part to commit the crime. Ex. 2 at 27-28.

> **CHS:** The weapons and shit the ugh, I have, I have the money. So if you're willing to do the purchases for me, I can get, I you know—
>
> **Hall:** 100%

Hall also discussed how he would benefit from the purchase. *Id.* at 29.

> **CHS:** It's illegal regardless I'm a convicted felon.
>
> **Hall:** Yeah.
>
> **CHS:** So if your given me a weapon and say I go into a situation, it it's regardless, it's illegal you know what I mean? So, I mean if you don't feel comfortable doin it then don't do it. You know.
>
> **Hall:** How about cause I'm think how it's gonna benefit us both if we both get these right.

And Hall talked about how he would deny the crime if caught. *Id.*

> **Hall:** And if all else fails I just say yeah, I didn't know he was a felon.
>
> **CHS:** Yeah, yeah, exactly just say I didn't know he was a fuckin felon. You're good.

6

Given these statements, counsel reasonably concluded that Hall was unlikely to show a lack of predisposition.

Hall would also have struggled to show inducement, given that "[s]imple evidence that a government agent solicited, requested, or approached the defendant to engage in criminal conduct" is not enough. *Nguyen*, 413 F.3d at 1178 (cleaned up). Nor is it enough to show "that the government agent initiated the contact with the defendant or proposed the crime." *Id.* (cleaned up). Here, as shown in the conversations above, the informant did nothing more than that.

In all, counsel's assessment of the entrapment defense was more than reasonable. The ultimate merit of her strategy was borne out in a plea agreement where the government agreed to recommend probation; a presentence report where probation recommended the same; and a judgment where this Court imposed probation—all in the face of a guidelines range that recommended imprisonment. *See* Doc. 26 at 2; Doc. 34-1 at R-1; Doc. 38 at 2.

### A.     Hall has not shown prejudice either.

In the context of a guilty plea, prejudice means "a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have instead insisted on going to trial." *Hill*, 474 U.S. at 57. Where, as here, a defendant alleges that counsel failed to investigate, prejudice turns on the likelihood that further investigation "would have led counsel to change [her] recommendation as to the plea." *Id.* at 59. And when that recommendation is based on counsel's advice about an affirmative defense, prejudice "will depend largely on whether the affirmative defense

7

likely would have succeeded at trial." *Id.*

As explained, counsel already knew the essential information about Hall's mental health and the informant, which shows that further investigation in either area would not have changed her recommendation. And even if counsel had been wholly uninformed, nothing that Hall offers in his motion would have supported an entrapment defense to such an extent that counsel would have changed her recommendation to plead guilty.

Start with Hall's mental-health issues, which Hall has not shown made him susceptible to entrapment. For example, he cites his low-processing speed as documented in a 2017 evaluation report. Doc. 42 at 4; Doc. 42-6 at 6. But that report recognized that Hall "demonstrated good insight and judgment[,]" and his low-processing speed "may make the task of comprehending novel information more time-consuming and difficult[.]" Doc. 42-6 at 4. Difficulty understanding new information is not the same as being vulnerable to entrapment. And nothing Hall has submitted links any aspect of his mental health to that vulnerability. Consequently, the mental-health evidence Hall includes with his motion would probably have been excluded at trial given the limits the Tenth Circuit has placed on that sort of evidence and Hall's burden to "clearly demonstrate" its relevance. *United States v. Brown*, 326 F.3d 1143, 1147 (10th Cir. 2003) (mental-health evidence to negate specific intent).

Now take the informant, who Hall says was a violent criminal that used "intimidation tactics[.]" Doc. 42 at 4. Hall relies primarily on a February 2023 article in *The Intercept*. Hall himself is the article's main source, along with "more than 300 pages of FBI reports and hours of FBI undercover recordings" (that bear what some

8

might describe as a resemblance to the discovery produced in this case).  Doc. 42-4 at 2.  Hall told the reporter that he was "afraid" of the informant and bought the firearm because he thought the informant "would come after him if he refused."  *Id.* at 14.  That fear appears to have been based on the facts that the informant drove around in a hearse filled with guns, boasted about his foreign-military experience, and generally seemed like a "badass" (as Hall put it).  *Id.* at 1, 3.

But Hall offers no evidence that the informant ever expressly or implicitly threatened him or otherwise induced him to commit the offense.  Hall's assertions that he was coerced would have been difficult to square with the opportunities he had to back out of the deal.  Take the following example.  Ex. 1 at 17.

> **CHS:**  Yeah, so I can get, and like I said, I can help you get that shit, but I just, now I want to make sure, you know, I don't want you to feel like I'm pressuring you into this.  This is something you clearly want to do and not me.
>
> **Hall:**  Yeah, I asked.

Not only that, information about the informant's conduct and past does not appear relevant to predisposition, which focuses on Hall.  *See Nguyen*, 413 F.3d at 1178.  And it is further unclear how facts that Hall says he learned about the informant well after the offense—such as the details about his criminal history—could have supported either inducement or lack of predisposition at the time the informant first approached Hall about the crime, which is the relevant time to assess entrapment.  *Id.*

Hall's assertion that he would "not have taken any plea deal" if he knew what he knows now does not establish prejudice.  Doc. 42 at 5.  A defendant's "mere allegation

9

that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient[.]" *United States v. Dominguez*, 998 F.3d 1094, 1111 (10th Cir. 2021) (cleaned up).  Thus, "incorporated and subsumed" into the prejudice standard is a requirement that the defendant show "that his decision to reject the plea would have been rational under the circumstances."  *Id.* (cleaned up).

That is not the case here.  The evidence against Hall was strong given the recordings of his conversations with the informant.  And the entrapment defense was weak as shown above.  If convicted at trial, Hall faced a guidelines range of 15-21 months' imprisonment.  Doc. 34 at 6.  Under the plea deal, the government agreed to recommend probation.  Doc. 26 at 2.  That was a significant—and uncommon—benefit to Hall.  The prosecutor explained at sentencing that he did not "recall ever recommending or agreeing to a probationary sentence" before.  Ex. 3 at 19.  The Court concurred:  "It's significant that you are agreeing with the probationary sentence because I don't recall you ever doing that before, so that carries some weight with me." *Id.* at 22.  Under these circumstances, it would not have been rational for Hall to reject the plea deal.

## II. Hall's prosecutorial-misconduct claim is meritless and procedurally defaulted.

Hall next claims prosecutorial misconduct.  He alleges that the government failed to disclose information about the informant in violation of its constitutional obligation to disclose material exculpatory evidence.  Hall has procedurally defaulted this claim.  But it fails for the more straightforward reason that it is meritless.

### A. The government exceeded its discovery obligations

Hall specifically says that the government failed to disclose the following information: "the extent of the informant's history with the FBI[,]" the informant's "past history of violence and criminal convictions[,]" and that the informant "was sent by the FBI to purposely infiltrate Black Lives Matter protests" and to entrap people and disrupt First Amendment activities. Doc. 42 at 5; Doc. 42-1 at 8. Hall does not explain how any of this information was exculpatory or material. At most, one can infer from his motion that he believes that this information could have been useful in support of an affirmative defense of entrapment or to impeach the informant if he testified at trial.

The problem for Hall is that "the Constitution does not require the [g]overnment to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 632 (2002). The same is true for information regarding an affirmative defense. *Id.* at 633. Thus, the government had no obligation to disclose this information before Hall pleaded guilty.

And yet the government did disclose this information. The government produced the informant's criminal history, along with numerous reports that documented his activities during the protests and his motivations to cooperate. *See* Ex. 4 (production letter, index, and relevant documents)

These materials disclosed the information Hall says was withheld. To illustrate, take Hall's assertions that that the government failed to disclose that the informant was dispatched by the FBI to entrap people and disrupt First Amendment activities. These are not so much disclosable assertions of fact as they are tendentious assertions of

11

opinion drawn from the article in *The Intercept*. Even still, the government disclosed the underlying facts mentioned in the article. For instance, the article's assertions that the informant provided information about speech were based on FBI documents that memorialized the informant's discussions with Hall. Doc. 42-4 at 8. The government disclosed those documents. Similarly, the article's assertions that the informant "targeted" two activists referred to Hall and another man named Bryce Shelby. *Id.* at 12. The government undeniably produced discovery about Hall. And even though the government had no apparent discovery obligation to produce information about Shelby, it disclosed, for example, the transcript of a lunch the informant had with Shelby and Hall at a barbeque restaurant, which was referred to in the article. *See* Ex. 2.

### B. Hall procedurally defaulted his prosecutorial-misconduct claim.

Hall's prosecutorial-misconduct claim also fails because he procedurally defaulted it. In his plea agreement, Hall waived his appellate rights subject to certain exceptions, none of which allowed him to appeal a prosecutorial-misconduct claim. *See* Doc. 26 at 2-3. Hall did not appeal on that or any other ground.

Hall's failure to raise this claim on direct appeal constitutes a procedural default. *United States v. Frady*, 456 U.S. 152, 165 (1982). "This rule applies even where the defendant has waived his right to appeal." *United States v. Majid*, 196 F. App'x 685, 686 (10th Cir. 2006) (unpublished). Hall must therefore show cause and actual prejudice, or a fundamental miscarriage of justice, to get around the procedural bar.

*United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996).  He has not.[1]

Starting with cause, although Hall alleges that counsel was ineffective in other ways, he does not allege that she was ineffective in a way that would explain the default (for example, that she was ineffective in relation to the appellate waiver or the failure to pursue a direct appeal in spite of the waiver).  *See United States v. Smith*, 2022 WL 889178, at *3 (D. Colo. Mar. 25, 2022).  Cause may also exist when "the factual or legal basis for a claim was not reasonably available to counsel[.]"  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  But what the government did produce in discovery gave counsel sufficient factual basis to seek additional disclosures and relief as she saw fit.

Turning to actual prejudice, Hall must show an "error of constitutional dimensions that worked to his actual and substantial disadvantage."  *United States v. Snyder*, 871 F.3d 1122, 1128 (10th Cir. 2017) (cleaned up).  Hall has not shown that the government withheld any evidence, much less any material exculpatory evidence in violation of the Constitution.  Nor has he shown any disadvantage given what was disclosed.

Hall also has not established that a fundamental miscarriage of justice would result if his claim is not considered, which is another way around the procedural bar. *Cox*, 83 F.3d at 341.  That requires "a colorable showing" of actual innocence.  *Id.*  Hall undisputedly committed the crime to which he pleaded guilty as a factual matter.  And

---

[1] Hall's prosecutorial-misconduct claim is procedurally barred even though his plea agreement "does not prevent [him] from seeking relief otherwise available in a collateral attack" on the ground that he "was prejudiced by prosecutorial misconduct."  Doc. 26 at 3.  That exception precludes enforcement of the waiver as to a prosecutorial-misconduct claim, but does not suspend normal operation of the procedural bar because the relief sought must be "otherwise available in a collateral attack[.]"  *Id.*

13

even if successful assertion of an entrapment defense could in the abstract establish his innocence, Hall has not shown the defense was colorable here given the manifold weaknesses described above.  *See Pacheo v. El Habti*, 62 F.4th 1233, 1243 n.8 (10th Cir. 2023) (recognizing that some affirmative defenses can support a claim of actual innocence).

### III.     Hall's outrageous government conduct claim is waived and meritless.

Finally, Hall claims that the informant engaged in outrageous government conduct in violation of the Due Process Clause.  Hall waived this claim in his plea agreement.  And it is meritless anyway.

#### A.     Hall waived his outrageous government conduct claim.

Hall's plea agreement contained a general collateral-review waiver subject to certain exceptions.  In determining whether to enforce that waiver, the Court considers whether the claim asserted falls within its scope, whether the defendant knowingly and voluntarily entered into the waiver, and whether enforcement would result in a miscarriage of justice.  *United States v. Lopez-Aguilar*, 912 F.3d 1327, 1329 (10th Cir. 2019).  All three factors warrant enforcement of the waiver here.

First, Hall's outrageous government conduct claim falls within the waiver, which covers his "right to challenge this prosecution, conviction or sentence … in any collateral attack" subject to three exceptions.  Doc. 26 at 3.  Two of those exceptions, concerning ineffective assistance and retroactive changes in sentencing law, are patently inapplicable.  The third exception applies if "the defendant was prejudiced by prosecutorial misconduct."  *Id.*  But the common thread of any prosecutorial-misconduct

14

claim is *prosecutorial* misconduct (say, improper statements at trial or a discovery violation).  *See Berger v. United States*, 295 U.S. 78, 88 (1935).  Hall's claim, in contrast, rests on the informant's alleged misconduct—not the prosecution's.

Second, Hall knowingly and voluntarily entered into the waiver.  The plea agreement says so.  Doc. 26 at 3 ("The defendant knowingly and voluntarily waives…").  So does Hall's statement in advance of his plea.  Doc. 27 at 5 ("I know that the terms of my plea agreement with the government contain a waiver of my right to appeal or collaterally attack the sentence…").  And at the change of plea hearing, the Court asked Hall if he understood and agreed to the waiver.  He said yes.  Ex. 5 at 12.  Thus, after an adequate Rule 11 colloquy, the Court found that Hall knowingly and voluntarily entered into the plea agreement.  *Id.* at 17-18.

Third, enforcement of the waiver would not result in a miscarriage of justice—which exists only if the district court relied on an impermissible factor (such as race), the defendant was deprived of effective assistance of counsel in connection with negotiation of the waiver, the sentence exceeds the statutory maximum, or the waiver is otherwise unlawful (in a way related to the waiver itself that seriously affects the fairness, integrity, or public reputation of judicial proceedings).  *United States v. Hahn*, 359 F.3d 1315, 1327 (10th Cir. 2004) (en banc).  None of these circumstances are present here: Nothing in the record suggests that this Court relied on an impermissible factor.  Although Hall asserts ineffective assistance in other ways, he does not do so in relation to the waiver.  His sentence of probation was well below the statutory maximum.  And there is no indication the waiver is otherwise unlawful.

### B. Hall's outrageous government conduct claim is meritless.

Even if this Court reaches the merits, Hall's claim fails. Government conduct during an investigation can be "sufficiently outrageous" to bar the government from prosecuting "offenses developed through that conduct because doing so would offend the Due Process Clause." *United States v. Wagner*, 951 F.3d 1232, 1254 (10th Cir. 2020) (cleaned up). The conduct must be "so shocking, outrageous, and intolerable that it offends the universal sense of justice." *Id.* (cleaned up). The defendant must show "excessive government involvement in the creation of the crime" or "significant governmental coercion to induce the crime." *Id.* (cleaned up).

Hall argues that the government's use of an "undercover operative … with the specific purpose of disrupting protected free speech and assembly" was outrageous conduct. Doc. 42-1 at 5. This claim again repeats the not entirely neutral characterizations of a reporter as if they were facts. The actual facts defeat Hall's claim.

For a start, the underlying conduct was not shocking, outrageous, or intolerable. It goes without saying that law enforcement's use of a confidential informant is unremarkably standard fare. And Hall's assertion that the informant targeted free speech appears to rest entirely on assertions from the article that the informant provided information about Hall's "incendiary rhetoric[,]" including a statement that "[w]e need to burn this motherfucker down[,]" and "a conversation in which Hall spoke vaguely of violent revolution and a desire to train for combat." Doc. 42-4 at 8. Whether or not these statements were protected under the First Amendment, *see Brandenburg v. Ohio*,

16

395 U.S. 444, 448-49 (1969), their violent nature made them a legitimate subject of investigation all the same.  After all, judges "do not possess a chancellor's foot veto over law enforcement practices of which they do not approve."  *United States v. Dyke*, 718 F.3d 1282, 1285 (10th Cir. 2013) (cleaned up).

In addition, outrageous government conduct focuses on "excessive government involvement in the *creation of the crime*" or "coercion to *induce the crime*."  *Wagner*, 951 F.3d at 1254 (cleaned up; emphasis added).  That is, there must be some link between the supposedly outrageous conduct and the charged crime.  The Court "is not to reverse convictions simply to punish bad behavior by governmental agents, but should do so only when the bad behavior precipitates serious prejudice to some recognized legal right of the particular defendant[.]"  *Dyke*, 718 F.3d at 1285.  Whatever else might be protected speech, Hall's knowing purchase of a firearm for a convicted felon was not.  And any outrageous government conduct in relation to free speech neither created nor induced that crime.

\*     \*     \*

One last procedural point:  Hall is not entitled to an evidentiary hearing because "the motion and the files and records of the case conclusively show" that he is not entitled to relief.  28 U.S.C. § 2255(b).  There are no disputes of material fact.  And "district courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."  *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012).

17

**CONCLUSION**

The Court should deny Hall's motion.

Dated: July 26, 2023

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: s/ *Rajiv Mohan*
Rajiv Mohan
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Fax: 303-454-0406
E-mail: Rajiv.Mohan@usdoj.gov

Attorney for Government

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*s/ Kayla Keiter*
KAYLA KEITER
U.S. Attorney's Office